NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES ROUSE,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 11-4282 (JLL)<br><br>OPINION |

**LINARES**, District Judge.

This matter comes before the Court upon the appeal of James Rouse ("Plaintiff") from the final decision of the Commissioner of Social Security (the "Commissioner") upholding Plaintiff's Disability Cessation, and the final decision of the Commissioner, denying Plaintiff's application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.1(f). After reviewing the submissions of both parties, for the following reasons, the final decisions of the Commissioner are **affirmed**.

I.     BACKGROUND[1]

    A.     Procedural History

On April 24, 1996, Plaintiff filed applications for DIB and SSI, alleging a disability beginning June 1, 1995 (the "1996 Applications"). On July 29, 1999, Administrative Law Judge

---

[1] The facts set-forth in this Opinion are taken from the parties' statements in their respective moving papers and the transcript of the record.

1

Ralph Muehlig issued a decision finding Plaintiff disabled. On August 30, 2006, Plaintiff received a Notice of Disability Cessation, informing him that the Social Security Administration (the "Agency") found that he was no longer disabled as of July 2005. In this Notice, Plaintiff was informed that he had not cooperated with the Agency's continuing disability review because he failed to answer four separate letters sent to him. On November 19, 2006, Plaintiff filed a Request for Reconsideration of his Disability Cessation. On November 16, 2007, the Agency affirmed the Disability Cessation. On March 18, 2008, Plaintiff filed a request for a hearing.

Plaintiff's hearing was scheduled for October 1, 2008. Plaintiff failed to appear at this hearing, and on October 1, 2008, Administrative Law Judge Donna Krappa (the "ALJ") issued a Notice to Show Cause for Failure to Appear. On November 10, 2008, the ALJ dismissed Plaintiff's request for a hearing for failure to show good cause as to why he did not appear at the October 1, 2008 hearing. Plaintiff filed a Request for Review of this decision on February 13, 2009. On September 2, 2009, the Appeals Council remanded the matter for further proceedings, finding that good cause existed for Plaintiff's failure to attend the October 1, 2008 hearing.

On April 21, 2009, Plaintiff filed applications for DIB and SSI (the "2009 Applications"), alleging a disability beginning December 1, 2007. Plaintiffs' claims were denied initially on August 26, 2009, and upon reconsideration on October 14, 2009. Plaintiff filed a request for a hearing on October 29, 2009. A hearing was scheduled for January 4, 2010, but Plaintiff failed to appear. Another hearing was scheduled and held on March 24, 2010 before the ALJ, where she addressed both the 2009 Applications and the Cessation of Benefits from the 1996 Applications. At this hearing, testimony was taken from Vocational Expert ("VE"), Pat Green, and Medical Expert ("ME"), Dr. Martin Fechner.

On June 7, 2010, the ALJ issued a decision finding that Plaintiff was not disabled under the Act from December 1, 2007 through the date of the decision. The ALJ also issued a separate decision on June 7, 2010, affirming the Cessation of Benefits from the 1996 Applications. The Appeals Council subsequently denied Plaintiff's request for review of these decisions. Plaintiff then commenced the instant action.

    B.    Factual History

        1.    Plaintiff's Testimony

At the time of his hearing, Plaintiff was fifty-two years old and married with ten children. He does not have a driver's license, as he lost it due to a drunk driving incident. He last worked as a packing mechanic in 1994, and claims that he can no longer work because his memory is gone and he passes out. Plaintiff can walk three to four blocks before needing to stop because his leg gives out and he gets dizzy. He can stand for twenty minutes at a time before both his right and left sides become numb. He can sit for one hour at a time and can lift up to ten pounds.

During the day, Plaintiff will listen to the radio, say prayers, shower, clean his room, and take out the trash. He is able to dress himself "slowly but surely." He attends church three times a week for about three hours at a time. He frequently stands up and down during the service because he cannot sit still. To relieve his pain, he takes Motrin and hooks himself to a TENS unit. He has difficulty sleeping at night because he will worry about his financial situation and because he will think he is having a stroke due to leg cramps he experiences.

        2.    Medical Evidence

On August 3, 2009, psychologist Dr. Kim Arrington conducted a consultative evaluation of Plaintiff. Dr. Arrington noted that Plaintiff appeared his stated age and was dressed appropriately, but that his hygiene and grooming were poor. Dr. Arrington found that Plaintiff's

speech was fluent, his expressive and receptive language skills were adequate, and his thought processes were coherent and goal directed with no evidence of hallucinations, delusions, or paranoia. She stated that his affect was agitated and anxious, his mood was dysthymic, his sensorium was clear, and he was oriented to time, place, and person. Dr. Arrington found that Plaintiff's recent and remote memory skills were impaired, and that his attention and concentration were mildly impaired. Dr. Arrington opined that Plaintiff was able to follow and understand simple directions and instructions, perform many simple tasks with help, and maintain a regular schedule. However, she also found that he would have difficulty learning new tasks and performing complex tasks independently. Dr. Arrington diagnosed Plaintiff with an adjustment disorder with depressed mood, and she ruled out a cyclothymic disorder, bipolar disorder, and alcohol abuse.

Plaintiff was examined by Social Security examiner Dr. Marvin Soalt, on August 12, 2009. Plaintiff complained to Dr. Soalt that he had loss of power of his right extremities (especially his hand), soreness of his right foot, and back pain. Plaintiff also complained that his mouth pulled to the right. Dr. Soalt noted that Plaintiff had a full range of motion in the cervical spine and a limited range of motion in all directions in the lumbar spine, with pain upon palpitation of the right lower back area and the right toe. Dr. Soalt found that Plaintiff's motor power was generally 5/5, with the exception of his right hip flexion, which was 3/5. Dr. Soult diagnosed Plaintiff with cervical discogenic disease with right upper extremity weakness by complaint and lumbar discogenic disease with right lower extremity weakness by complaint.

Plaintiff has made a number of trips to the emergency. In 2006, he made a trip due to a sprain and strain to his lower back after falling out of a chair. In 2009, he made two separate trips for i) a superficial laceration on his right forearm after a fight with his stepson, and ii) acute

4

bronchitis. A third trip in was made in 2009 for complaints of chest pain, a toothache, neck pain, and depression due to being denied SIB. During this fourth trip, Plaintiff was diagnosed with cocaine intoxication. It was also noted that he appeared to be manipulating the system for DIB, as he stated that his attorney told him to seek psychiatric help in the emergency room in order to assist his disability claim.

### 3. ME Testimony

Dr. Fechner testified that although Plaintiff's evidence notes a history of hypertension, the condition is fairly well-controlled. Dr. Fechner also noted that the record contains a positive drug screen in October 2009. After discussing Plaintiff's physical condition, Dr. Fechner concluded that Plaintiff is capable of work at the medium level as defined in the Regulations.

### 4. VE Testimony

The ALJ asked Ms. Green to consider a hypothetical person with Plaintiff's age, education, work, history, and physical limitations. Ms. Green testified that several jobs exist in the national economy which such an individual could perform, such as industrial cleaner, produce packer, and fleece tier.

## II. STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla . . . but may be less than a preponderance." Woody v. Sec'y of Health & Human Servs, 859 F.2d 1156, 1159 (3d Cir. 1988). It "does not mean a large or considerable amount of evidence, but rather such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate

to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (citation omitted). Not all evidence is considered "substantial." For instance,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g. that offered by treating physicians)–or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ must make specific findings of fact to support his ultimate conclusions. Stewart v. Secretary of HEW, 714 F.2d 287, 290 (3d Cir. 1983).

The "substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). As such, it does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. Monsour Med. Ctr. V. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). "The district court . . . is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)). A Court must nevertheless "review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). In doing so, the Court "must 'take into account whatever in the record fairly detracts from its weight.'" Id. (quoting Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)).

To properly review the findings of the ALJ, the court needs access to the ALJ's reasoning. Accordingly,

6

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)). A court must further assess whether the ALJ, when confronted with conflicting evidence, "adequately explain[ed] in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). If the ALJ fails to properly indicate why evidence was rejected, the court is not permitted to determine whether the evidence was discredited or simply ignored. See Burnett v. Comm'r of Soc. Sec, 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).

### III. APPLICABLE LAW

#### A. The Five-Step Process for Evaluating Whether a Claimant Has a Disability

A claimant's eligibility for benefits is governed by 42 U.S.C. §1382. Pursuant to the Act, a claimant is eligible for benefits if he meets the income and resource limitations of 42 U.S.C. §§ 1382a and 1382b, and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). A person is disabled only if his physical or mental impairment(s) are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of work which exists in the national economy." 42 U.S.C. §1382c(a)(3)(B).

7

To determine whether the claimant is disabled, the Commissioner performs a five-step sequential evaluation. 20 C.F.R. §416.920. The claimant bears the burden of establishing the first two requirements, namely that he (1) has not engaged in "substantial gainful activity" and (2) is afflicted with a "severe impairment" or "combination of impairments." 20 C.F.R. §404.1520(a)-(c). If a claimant fails to demonstrate either of these two requirements, DIBs are denied and the inquiry ends. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). If the claimant successfully proves the first two requirements, the inquiry proceeds to step three which requires the claimant to demonstrate that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Part 404 Appendix 1 (the "Listings"). If the claimant demonstrates that his impairment meets or equals one of the listed impairments, he is presumed to be disabled and therefore, automatically entitled to DIBs. Id. If he cannot make the required demonstration, further examination is required.

The fourth step of the analysis asks whether the claimant's residual functional capacity ("RFC") permits him to resume his previous employment. 20 C.F.R. §416.920(e). If a claimant is able to return to his previous employment, he is not disabled within the meaning of the Act and is not entitled to DIBs. Id. If the claimant is unable to return to his previous employment, the analysis proceeds to step five. At this step, the burden shifts to the Commissioner to demonstrate that the claimant can perform a job that exists in the national economy based on the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 416.920(g). If the Commissioner cannot satisfy this burden, the claimant is entitled to DIBs. Yuckert, 482 U.S. at 146 n.5.

B. <u>The Requirement of Objective Evidence</u>

Under the Act, disability must be established by objective medical evidence. "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). Notably, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." <u>Id</u>. Specifically, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

<u>Id</u>.; <u>see</u> 42 U.S.C. § 1382c(a)(3)(A). Credibility is a significant factor. When examining the record: "The adjudicator must evaluate the intensity, persistence and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work-related activities." SSR 96-7p, 1996 WL 374186 (July 2, 1996). To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. <u>Id</u>. The requirement for a finding of credibility is found in 20 C.F.R. § 416.929(c)(4). A claimant's symptoms, then, may be discredited "unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 416.929(b). See also <u>Hartranft v. Apfel</u>, 181 F.3d 358, 362 (3d Cir. 1999).

9

## IV. DISCUSSION

### A. Whether the ALJ Erred in Affirming Plaintiff's Appeal of his Disability Cessation

Plaintiff claims that the ALJ erred in dismissing his appeal of his Disability Cessation because the ALJ did not consider Plaintiff's mental disability when she decided that Plaintiff failed to cooperate. The Commissioner has established a multi-step sequential evaluation process for determining whether a person's disability has ended. See 20 C.F.R. § 404.1594(f). Steps one and two are identical to the steps discussed above used to determine whether a claimant is disabled, and ask i) if the claimant is engaging in substantial gainful activity, and ii) if the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 404.1594(f)(1)-(2). Step three asks whether the claimant has experienced a medical improvement. 20 C.F.R. § 404.1594(f)(3). If there has been a medical improvement, step four asks whether the improvement is related to the claimant's ability do work. 20 C.F.R. § 404.1594(f)(4). However, even if it is determined that there is no medical improvement, or that the improvement is not related to the claimant's ability to work, consideration is given to whether the case meets any of the special exceptions to medical improvement. 20 C.F.R. § 404.1594(f)(5). If a Group One Exception applies, the Commissioner will continue to step six, and if a Group Two exception applies, the claimant's "disability will be found to have ended." Id. Here, the ALJ found that a Group Two explain applied, namely Plaintiff's failure to cooperate in the review process without good cause. See 20 C.F.R. § 404.1594(e)(2).

The following factors are used to determine whether "good cause" exists for failure to cooperate:

> (1) What circumstances kept [the claimant] from making the request on time;
> (2) Whether our action misled [the claimant];

10

> (3) Whether [the claimant] did not understand the requirements of the Act resulting from amendments to the Act, other legislation, or court decisions; and
> (4) Whether [the claimant] had any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) which prevented [the claimant] from filing a timely request or from understanding or knowing about the need to file a timely request for review.

20 C.F.R. § 404.911.

Plaintiff's contention that the ALJ did not consider his mental history to determine whether good cause existed is untrue, as the ALJ expressly stated that she considered "any possible physical, mental, educational and linguistic limitations" in deciding that Plaintiff failed to show good cause. The ALJ simply did not find Plaintiff's testimony to be credible, and this Court finds that substantial evidence supports this conclusion. Plaintiff's argument regarding notice are problematic. As the ALJ stated, the letters regarding the appointments were mailed to the same address where Plaintiff had received his checks, yet he had no problem receiving his checks. Further, as opined by Dr. Arrington, Plaintiff is able to follow and understand simple directions and instructions. It is curious that Plaintiff claims to not have received notice of the appointments, yet began to communicate with the Agency and soon as he received a notice that his benefits were being terminated. As the Commissioner points out, Plaintiff has displayed a pattern of selective cooperation, whereby he has refused to cooperate until a final decision has been made against him.

As such, this Court finds that there is substantial evidence in the record to support the ALJ's finding that no good cause existed for Plaintiff's failure to cooperate in the Disability Cessation process.

B.  Whether the ALJ Erred in Finding that Plaintiff is Not Disabled

Plaintiff first argues that an IQ test that he took in 1999 showed that he was impaired, and that Dr. Arrington's 2009 report is consistent with that test. Plaintiff points to the fact that Dr. Arrington found that Plaintiff was anxious and agitated, had problems with concentration, struggled with multiplication and division, and had mood fluctuations. Plaintiff also relies on Dr. Arrington's finding that Plaintiff had a Global Assessment of Function of 55. However, Dr. Arrington also made a number of positive comments about Plaintiff's health. For example, Dr. Arrington found that Plaintiff was able to follow and understand simple directions and instructions, perform simple tasks with help, and maintain a regular schedule. Dr. Arrington also stated that Plaintiff's speech was fluent, his expressive and receptive language was adequate, and his thought processes were coherent and goal directed. Further, with respect to Plaintiff's concentration, Dr. Arrington indicated that it was only *mildly* impaired.

In addition to Dr. Arrington's report, the ALJ relied on Dr. Fechner's testimony that Plaintiff is capable of performing medium work. Similarly, state agency medical consultants, Drs. Virgili and Herrera, opined that Plaintiff could essentially perform the simple demands of unskilled medium work. Specifically, Dr. Herrera found that Plaintiff can remember instructions and take direction from supervisors, and that he is capable of performing simple, routine, and repetitive tasks. Finally, the ALJ properly considered Plaintiff's testimony, finding that portions of his testimony concerning the intensity and persistence of his symptoms was not credible. The ALJ noted that Plaintiff stated that he was able to fully perform a number of daily activities and that the medical evidence before her contradicted Plaintiff's description of his symptoms. See Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (upholding the ALJ's finding that the plaintiff's testimony was exaggerated because it was supported by substantial evidence in the

record). The ALJ also considered the emergency room visit where Plaintiff admitted that his attorney told him to seek psychiatric help to aid his DIB claim. In his Reply Brief, Plaintiff's attorney expresses anger that the Commissioner would suggest that it was improper for him to recommend that Plaintiff seek psychiatric help. However, the problem lies not within the attorney's suggestion that Plaintiff seek help, but in the reasons expressed by Plaintiff in the emergency room as to why his attorney suggested he seek such help.

Plaintiff's second argument pertains to a September 1, 2011 Agency decision that finds Plaintiff disabled as of November 10, 2010. However, this decision deals with applications submitted by Plaintiff *after* the applications discussed in the ALJ's opinion. Further, as the Commissioner points out, the September 1, 2011 decision provided by Plaintiff states that Plaintiff reported that he became unable to work on July 1, 2010. As such, this decision is not relevant to the issues before this Court. See Jackson v. Astrue, 402 F. App'x 717, 718 (3d Cir. 2010) ("Standing alone, the fact that the Commissioner subsequently found claimant to be disabled does not warrant remand or reversal in the absence of new and material evidence, which claimant here has failed to provide.").

Accordingly, this Court finds that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence. As such, the final decision of the Commissioner is affirmed.

## V. CONCLUSION

For the foregoing reasons, the decisions of the Commissioner are **affirmed**. An appropriate order follows this Opinion.

DATED: 23rd of April, 2014.

JOSE L. LINARES
U.S. DISTRICT JUDGE